## Ingram's Estate

*William M. Boenning,* for exceptant.

*Harold D. Greenwell* and *W. Nelson West, 3d,* contra.

VAN DUSEN, P. J., November 19, 1937.—Of the 15 investments to which objection was made, 12 were delivered to the trustee by settlor. As to these, the trustee's duty was to inform himself immediately concerning the nature of each item and the outlook for the future, and to use his best judgment after obtaining adequate information as to whether to sell it or keep it. This process a trustee must repeat at reasonable intervals of time.

He has the same duty with respect to the investments of the trust estate for which he is originally responsible. The evidence is abundant that the present trustee did these very things as to both classes. As we said in Hammett's Estate, 23 D. & C. 353: "He is not called upon to guess right, but only to give himself an opportunity to guess right." The surcharge in Kelch's Estate, 21 D. & C. 204, affirmed by a divided court without opinion in 318 Pa. 296, was made on the ground that the trustee had failed to meet the burden of proving that due care had been exercised.

The decision which the trustee makes must not ignore "danger signals" which would be apparent as such to a man of ordinary prudence; and the argument of exceptant in substance is that such "danger signals" existed. They are thus enumerated by him: Excessively high income incompatible with safety of principal; low rating by recognized and standard financial manuals; the inferior security afforded by a debenture bond; the remoteness of holding company securities from the real assets; the securities issued by public utility companies; progressive and continuous reduction in market price; progressive and continuous decline in "times interest earned"; securities of companies known as the Insull group, and securities of companies belonging to the Associated Gas & Electric Company group, that is to say, defects in management. Now all of these things are material to consider; but we cannot say that any one of them is such as would cause a man of ordinary prudence, finding in his possession as trustee investments to which these criticisms could apply, immediately to get rid of them. The problem still remains, once the securities are acquired, of attempting to forecast the future, admitting that defects exist.

Whether income is excessively high in comparison with the security of the principal is a matter upon which reasonable minds might differ and as to which it is necessary to form specific, not general, judgments comparing the rate of interest as well as may be with the degree of

security of the principal. None of these securities bore more than 6½ percent interest, and we cannot say that it is negligence in a trustee to purchase or to continue to hold securities bearing that rate. Low rating, inferior security, public agitation affecting a business, and scandal concerning management, when they become known to the trustee, also become known to all the world. These matters also affect the market price; and it is still a question whether, having got into the situation without blame, it is best to hold on or to sell: See Edwards' Estate, 6 D. & C. 121.

Upon reflection and in view of what is said in that case and in Hammett's Estate, supra, it should be apparent to those who criticize investments that decline in market price or in "times interest earned" does not convict a trustee of negligence in failing to sell an investment. The fallacy is that of substituting hindsight for foresight. On a given day the trustee has the means of knowing that the price has fallen day after day to that day, but he has no means of knowing what will happen the next day or the day after that. If men of ordinary prudence were able to forecast future market prices in that way, there would be no trading and no markets and no market price: See Edwards' Estate, supra. September 3, 1929, was the peak of the stock market; but on that day nobody knew it. Some of the items in this list recovered substantially after a long decline. At what point must he unavoidably sell?

Exceptant also objects to the lack of diversification, in that the investments were very largely in the public utilities field. No large amount was invested in any one item. We cannot say that it is negligence to invest principally in one field or one general class. Further, we would be at a loss to determine what action we should take in case we thought the trustee was negligent for this reason. For which investments is the trustee to be surcharged in such a case? See Elkins' Estate, 20 D. & C. 483.

There are 21 exceptions, but no exception complains specifically of the investment in a particular item. The

exceptions are rather drawn to state general principles of law and then to apply them to the investments, the number of items included in one exception varying from three to twelve. The exceptions should be so drawn that by sustaining a given exception a definite money result will be accomplished. Because of the manner in which the exceptions are drawn and in which the argument has been presented, we have dealt with the case generally rather than specifically, though the auditing judge properly discussed each item specifically. The question is not what the trustee did generally or what his qualifications were for trusteeship, but what he did and knew with respect to each item. The rule that a trustee may not offset his gains in investment against his losses is illustrative of this principle.

The trustee purchased three investments, nos. 2, 10, and 11. No exception complains specifically of the investment of any one item. Not only are the exceptions drawn on general principles, as above stated, but the original act of making the investment and the watching of it when made are lumped together in one exception. The problem before a trustee who contemplates an investment is different from his problem once he has purchased: See Hammett's Estate, supra. It may well be that there are considerations which do not amount to a danger signal requiring immediate sale of an investment once made, or of an investment received from settlor, which yet ought to deter a trustee from making an original investment.

Nevertheless, we have taken the three items and compared them with the general statements of principle contained in the exceptions in which these items are mentioned, namely, that the securities were debentures, that they were the obligations of holding companies and the obligations of public utility companies, that one of them was never rated by Moody; and we find that none of these objections is sufficient to warn a trustee away from an investment.

Another objection applicable to item no 2 is that it was rated "Ba" by Moody at the time it was bought. It was stipulated that Moody's bond ratings should be considered as though they were offered in evidence, although they are not copied in the record. A reading of this rating given by Moody does not change our opinion, and we further note that in Hammett's Estate we refused to surcharge because of the purchase of securities rated "Ba" and "Baa".

The objection also applies to these three items that they showed an excessively high income yield. At the time they were bought they all yielded 5 percent.

The twenty-first exception complains that items nos. 10 and 11 were exchanged for other securities in one half the amount of the original investment. Nos. 10 and 11 are different items and they were not both exchanged for the same kind of security, although evidently all the securities formed part of the same utility empire. It is explained that the new securities were senior in lien to the old, that the new securities carried an option to exchange them at a later period for still other securities of junior lien, but of the original amount, and that the exchange was recommended as a means of relieving the interest charges upon the securities which were surrendered. It seems that over $100,000,000 of securities were exchanged on this basis. We cannot say that a man of ordinary prudence would not have made this exchange. On the contrary, when it is a question of accepting new securities in reorganization of a company which is hard pressed, there is little or nothing that the investor can do but accept the securities issued pursuant to the reorganization, or sell the old securities. As the old securities are exchangeable for the new, the market price of both is necessarily about the same.

The exceptions are dismissed and the adjudication is confirmed absolutely.